IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHELLE V.,**[1]

       **Plaintiff,**

v.                                       Civil Action 2:21-cv-5149
                                            Chief Judge Algenon L. Marbley
                                            Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

       **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Michelle V., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 7).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I. BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on January 15, 2019, alleging that she has been disabled since June 5, 2008, due to an inactive thyroid, hypertension, osteoarthritis of the right knee and right shoulder, her right hip being "out of socket," and

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

irritable bowel syndrome. (R. at 159-77, 219.)  Plaintiff's applications were denied initially in April 2019 and upon reconsideration in July 2019.  (R. at 68-91, 95-112.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 113-30.)  Plaintiff, who was represented by counsel, appeared and testified at a telephone hearing held on August 3, 2020.  (R. at 35-66.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)  On December 2, 2020, administrative law judge Deborah F. Sanders (the "ALJ") issued decision finding that Plaintiff has not been under a disability since June 5, 2018.  (R. at 12-34.)  The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)  This matter is thus properly before this Court for review.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony and statements to the agency as follows:

> [Plaintiff] alleged she was disabled due to an inactive thyroid, hypertension, right knee and right shoulder osteoarthritis, her right hip being out of the socket, and irritable bowel syndrome. She indicated she had taken a variety of medications, including Levothyroxine, Lisinopril, Meloxicam, Estradiol, Simvastatin, naproxen, and Tylenol. She testified she had been using a cane since a month before the hearing.
>
> [Plaintiff] reported a variety of symptoms. [ ]She indicated she had pain in the back of her thighs, calves, and right hip. She claimed she could not lift her right shoulder or hold things for long. She indicated her hip hurt all the time but was worse after sitting or standing. Later, she claimed that after getting a steroid shot in her hip, she would get shooting pains in her hips after doing household chores. She claimed to have shooting pain across her thigh at least twice a day. She indicated her left knee would swell a lot from doing chores. She indicated she could not sit or stand for long. She indicated she had a limp. She testified she had daily pain in her right hip, left knee, and her right shoulder. She indicated she had difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, and climbing stairs. She claimed she could only lift about ten pounds. She indicated she could stand for forty[-]five minutes at a time. She claimed she could only walk for about ten minutes and walk up to a block at a time. She indicated she could sit for two hours and would then have pain. She indicated she was stressed a lot.

> As for [Plaintiff's] day-to-day activities, she indicated she stopped working in June 2018 because her position was eliminated. She spent time watching television. She spent time taking care of her grandchild. She could change diapers but could not lift her grandchild without pain. She indicated she had trouble sleeping. She indicated she would have to lift up her leg to change. She indicated she had trouble shaving due to her right shoulder pain. She could prepare her own meals daily, do the dishes, dust, and make her bed. She would go outside once or twice a day. She could drive and go out alone. She could shop in stores and manage her own money. She indicated that she would get okay in the early morning, but after two to three hours she would be limping due to her pain. She indicated she had stopped working on the alleged onset date not because of her conditions, but because her position had been eliminated. She would drive twice a week to visit her mother, who lived twenty-five minutes away.

(R. at 21-22 (internal citations omitted).)

### III. MEDICAL RECORDS

The ALJ summarized the medical records as to Plaintiff's treatment and examinations as follows:

> In July 2018, [Plaintiff] indicated she would take walks daily. In September 2018, [Plaintiff] indicated she had pain in her left knee and right shoulder. She indicated she had pain in her left knee for a month and that it had gotten worse in the last week and was giving out. She indicated her left knee would swell. She indicated she had right shoulder pain for months and could not sleep on that side. Her home exercises were helping some, but she still had pain at night.
>
> In December 2018, X-rays had been ordered for her left knee, but [Plaintiff] stated her issues were with her right knee. All her prior treatment notes showed her complaints were with her left knee. [Plaintiff] indicated that she thought maybe it was her left, but now it was her right. She claimed to have right knee pain radiating into her right hip.
>
> In January 2019, she reported having right hip pain. She reported her pain radiated into her right thigh to her knee and that she had been having it for five to six months. She rated this pain as a three out of ten and that it increased with standing and walking. She came to her primary care provider to get paperwork filled out for her disability claim. She claimed she was not working now due to her hip pain. She felt some recent steroids did help make her feel a little better. She had declined physical therapy and a hip injection. She was told to do some home exercises. She was not a surgical candidate. She denied having any pain in her left lower extremity.
>
> In February 2019, she claimed to have severe right hip and right shoulder pain. She

3

claimed that she needed to have a hip replacement and possibly shoulder surgery. She claimed to have been able to work through her pain for years, but that her pain had increased significantly after being laid off.

In April 2019, she reported right hip pain without numbness, tingling, or swelling. Her hip pain radiated into the right lateral thigh to her knee. Her pain increased with standing and walking.

Her home exercise program was effectively decreasing her pain. She agreed to have a right hip injection. She denied having any pain in her left lower extremity. In June 2019, she felt good overall. She indicated she had struck her left knee on a coffee table a month ago and that since she had pain with pressure behind her left kneecap. She indicated she would develop a limp towards the end of the day from her knee pain. Her knee pain improved by the end of the month with conservative care. She was given a left knee injection.

On August 2019, she started physical therapy due to her hip and knee pain. She had some reduced pain in her knee and hip at the end of a session. She had felt really good and was not limping after one session, but then the pain returned. She described having some stiffness and minor soreness. She had an antalgic gait entering physical therapy that was better on exit.

In September 2019, she indicated physical therapy was helping her with walking, though it still needed some work. She was using a left knee brace. She indicated she was doing okay for three to four hours, but had to take a pain pill once she sat down. She reported some low back pain and significant left knee pain.

In October 2019, she was not as sore. In November 2019, she described having moderate pain in both hips and her left knee. She indicated her left knee was achy, but that she had a sharp pain that went up her thigh into her groin and down her leg. She indicated her pain was worse with stairs and walking, but had no significant numbness or tingling. Her left knee injection only helped for a few days. Her left knee brace helped significantly. Her doctor felt the description of her symptoms sounded more like they were coming from her back rather than her knee.

In December 2019, she complained of low back pain going into the buttocks and lateral thighs to the knee. Her pain would occasionally go into the calf, but not into the feet. She claimed her symptoms had been bothering her since the spring. She found physical therapy was very helpful so far. Injections had helped her joints as well, but did not decrease her overall pain.

On examination, she often had full range of motion. At times, she had reduced range of motion in her right hip. She had some tenderness in her right hip. She had some tenderness in her left knee, but not her right knee. She sometimes had no crepitus. At times, she had mild crepitus in her left knee. She had a trace to 1+ left knee effusion. She had some mild edema around her knee. At times, she had no edema.

She had some slow positional changes. She could transfer from sit to stand independently. She could transfer to an exam table without assistance.

Her sensation was intact. Her strength was typically intact. At times, she had some left leg weakness. She had no atrophy. Her reflexes were intact. She had some gait asymmetry or an antalgic gait. She was often not using an assistive device. Rarely, she was seen using a cane. She had negative straight leg raise testing.

Imaging and testing did show some degenerative changes, but did not fully support [Plaintiff's] allegations. December 2018 X-rays of the right shoulder showed mild degenerative changes of the acromioclavicular joint and with mild to moderate degenerative changes of the glenohumeral joints. December 2018 X-rays of the right knee showed trace joint effusion and tiny patellar and medial compartment osteophytes. The joint spaces and alignment were maintained. Overall, this was only minimal degenerative changes. January 2019 X-rays of the right hip showed moderate bilateral hip osteoarthritis. The sacroiliac joints and sacral lines were intact.

March 2019 X-rays of the right hip showed narrowing of the joint space and subchondral sclerosis and the acetabular roof area. April 2019 X-rays showed mild osteoarthritis of the left hip and moderate osteoarthritis of the right hip. June 2019 X-rays of the left knee showed mild medial and patellofemoral compartment degenerative changes and a small joint effusion.

A November 2019 MRI of the left knee showed a complex medial meniscal tear including a radial tear of the junction of the posterior horn and root. There was a moderate medial meniscal body extrusion. There were signs of a prior high grade ACL sprain. There was a small joint effusion and small Baker's cyst. There was moderate to advanced medial compartment cartilage degeneration and mild to moderate patellofemoral cartilage degeneration.

Additionally, [Plaintiff] was five foot seven inches tall. During the relevant period, she weighed between 210 to 255 pounds. This equated to a body mass index (BMI) ranging between 32.9 to 39.9. She was noted to be obese. On examination, her abdomen was sometimes soft and non-tender. At times, she had some abdominal tenderness.

On March 31, 2019, [Plaintiff] had a consultative examination with Dr. Muhammad Zubair. She indicated she had been having right shoulder pain since around 2018 and that it was getting worse. She claimed she could only walk half a block and stand for only fifteen minutes. On examination with Dr. Zubair, she could get on and off the examination table without difficulty. Her abdomen was soft and non-tender with normal bowel sounds. She had no edema. She walked with a limping gait without the use of an assistive device. She had no inflammation, swelling, or effusion. She could not heel-to-toe walk, walk on her heels or toes, hop, or squat. She had normal straight leg raise testing. She had no tenderness. Her strength was

intact. She had normal bulk and muscle tone. Her reflexes and sensation were intact. She had normal rapid alternating movements. She had normal finger-to-nose and heel-to-shin testing. She had reduced range of motion in her right shoulder and right hip, but otherwise normal range of motion. She had normal fine fingering and gross gripping.

(R. at 22-25 (internal citations omitted).)

## IV. ADMINISTRATIVE DECISION

On December 2, 2020, the ALJ issued her decision. (R. at 12-34.) The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023. (R. at 18.) Then, at step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantially gainful activity since June 5, 2018, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the right shoulder, mild osteoarthritis of the left knee, osteoarthritis of the bilateral hips, and obesity. (*Id.*) The ALJ further found that Plaintiff has not had an impairment or

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand and/or walk no more than two hours in an eight-hour workday and no more than thirty minutes at a time with one to two minutes to change position; occasional pushing and pulling with the right upper and right lower extremities; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasional balancing, kneeling, crouching, and crawling; occasional overhead reaching with the right upper extremity; never work at unprotected heights; never work around dangerous machinery; never perform commercial driving.

(R. at 20.) At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a print operator. (R. at 27.) Then, relying on the VE's testimony, the ALJ concluded at step five that Plaintiff can perform other jobs that exist in significant numbers in the national economy, such as an office helper, inspector and hand packager, or a small parts assembler. (R. at 27-28.) She therefore concluded that Plaintiff has not been under a disability since June 5, 2018. (R. at 28-29.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

In her Statement of Errors, Plaintiff submits two assignments of error. (ECF No. 12 at PAGEID ## 551-561.) First, Plaintiff argues that the ALJ erred in weighing the opinion from Carl Switzer, PT, Plaintiff's physical therapist. (*Id.* at PAGEID ## 551-555.) Second, Plaintiff argues that the ALJ's RFC assessment – specifically that Plaintiff was capable of performing light work – was not supported by substantial evidence. (*Id.* at PAGEID ## 555-561.) The Undersigned will address each assignment of error in turn.

A.    **The ALJ Properly Evaluated Mr. Switzer's Opinion.**

In her first assignment of error, Plaintiff argues that "when comparing [Plaintiff's physical therapist] Mr. Switzer's findings to the [RFC], it is clear that the ALJ did not adequately account for all of Mr. Switzer's opined limitations," and that "the ALJ failed to explain why those persuasive opinions were being omitted from the [RFC]." (ECF No. 12 at PAGEID # 551.)  Plaintiff specifically focuses on the following four statements from Mr. Switzer's February 25, 2019 functional capacity evaluation (the "FCE"):  (1) that Plaintiff could sit for twenty (20) minutes at a time; (2) that Plaintiff was limited to standing for ten (10) minutes before needing to sit down; (3) that Plaintiff could only bend ten (10) times due to a limited range of motion; and (4) that Plaintiff could not stand and use her upper extremities for approximately seven (7) minutes at a time.  (*Id.* at PAGEID ## 553-554 (citing R. at 331).)  Plaintiff focuses on the fact that the ALJ found Mr. Switzer's opinion to be "persuasive," and argues that the ALJ "did not provide any sort of reasoning as to why these persuasive opinions were omitted from the [RFC]," which Plaintiff maintains constitutes reversible error.  (*Id.* at PAGEID ## 554-555.)

In response, the Commissioner argues that "[t]he only portion of Mr. Switzer's report that constituted a medical opinion . . . was his statement that Plaintiff could not return to her past work due to 'decreased' lifting, carrying, bending, squatting, standing, and walking capacity." (ECF No. 15 at PAGEID # 577.)  As to the four specific statements identified by Plaintiff, the Commissioner argues that "[e]ach of the purported 'medical opinion' statements cited in [Plaintiff's] brief is a clinical finding" which is not subject to heightened articulation requirements.  (*Id.* at PAGEID ## 579-580.)  In her Reply brief, Plaintiff rejects the Commissioner's argument as a "post hoc rationalization," submitting that "the ALJ never

9

claimed that Mr. Switzer's opinions were not medical opinions." (ECF No. 16 at PAGEID # 589.) Plaintiff maintains that "[t]he ALJ did in fact find that Mr. Switzer's FCE contained medical opinions," and argues that the Commissioner's argument "contradicts the ALJ's own decision." (*Id.* at PAGEID # 590.) Plaintiff concludes that because Mr. Switzer's findings constitute medical opinions, "they should be subject to heightened consideration and articulation requirements," and that "[b]y failing to evaluate Mr. Switzer's opinions using the proper consideration standard, the ALJ negatively prejudiced [Plaintiff's] disability claim." (*Id.*)

The Undersigned disagrees with Plaintiff. The ALJ's discussion of Mr. Switzer's FCE reads as follows:

> I have considered the opinion of physical therapist Carl Switzer. In February 2019, he performed various functional testing on the claimant. During that testing, she was able to walk about six hundred feet before stopping due to her alleged right hip pain. She could lift fifteen pounds from the floor to waist level and twenty pounds to shoulder level. She could carry fifteen pounds one-hundred feet. She was seen being able to sit for twenty minutes and stand for ten minutes. She had severe pain doing one squat. She could stand and use her upper extremities for seven minutes with overhead reaching testing before stopping due to pain. **Mr. Switzer found she should not return to her previous employment and should seek a less physical job.** I will not provide written analysis about a statement on an issue reserved to the Commissioner as it is inherently neither valuable or persuasive to me. **This opinion was based on extensive testing of the claimant. It did support that the claimant would have some limitations with standing and walking and that she could lift up to twenty pounds. This was consistent with her imaging and conservative treatment history. Thus, this opinion was persuasive.**

(R. at 25-26 (emphasis added; internal citations omitted).)

Clearly, contrary to Plaintiff's representations, the ALJ presented Mr. Switzer as only having reached one conclusion – that Plaintiff "should not return to her previous employment and should seek a less physical job." (*Id.*) While Mr. Switzer did document, and the ALJ reported, other findings regarding Plaintiff's ability to sit, stand, bend, and use her upper extremity, Plaintiff is mistaken to characterize such findings as "medical opinions" necessitating

10

heightened consideration under the applicable regulations. Rather, as the Commissioner correctly observes, these findings fall under the category of "other medical evidence," which is defined as "evidence from a medical source that is not objective medical evidence[3] or a medical opinion," including "judgments about the nature and severity of [the claimant's] impairments . . . [and] clinical findings." *See* 20 C.F.R. § 404.1513(a)(3).[4] The ALJ's decision expressly confirms this, as the ALJ noted that her opinion (singular) "was based on extensive testing," referring to the above-discussed clinical findings regarding Plaintiff's ability to sit, stand, bend, and use her upper extremity. (R. at 26.)[5]

The Undersigned therefore concludes that Mr. Switzer's FCE only contained one "medical opinion" under the applicable regulations – that Plaintiff "should not return to her previous employment and should seek a less physical job." (R. at 25.) The ALJ did not error in her consideration of this opinion, however, because statements that a claimant is "able to perform regular or continuing work" are expressly designated as "[e]vidence that is inherently neither

---

[3] Objective medical evidence is defined as "signs, laboratory findings, or both," and "signs" is defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." 20 C.F.R. §§ 404.1502(f) (defining "objective medical evidence"), (g) (defining "signs").

[4] The Undersigned agrees with Plaintiff that "[i]t is not relevant *where* the opinions were documented, only *what* they were and if they were supported and consistent with the record." (ECF No. 16 at PAGEID # 589.) The Undersigned disagrees, however, with Plaintiff's argument that the above findings constitute medical opinions, because in reporting how long Plaintiff could sit, stand, bend, or use her upper extremities, Mr. Switzer was merely documenting his "clinical findings," which informed his "judgments about the nature and severity of [Plaintiff's] impairments." 20 C.F.R. § 404.1513(a)(3); *see also Harrington v. Kijakzi*, No. 20-CV-10954, 2021 WL 3486278, at *6 (E.D. Mich. Aug. 9, 2021) ("[C]linical findings are not 'medical opinions' as defined by the Social Security regulations and are not governed by the same standards.").

[5] This conclusion is consistent with Mr. Switzer's FCE, which notes that Plaintiff "***does not test*** appropriate to [return to work] at this time in her previous type of work in the 'Heavy Work' job category." (*See* R. at 328 (emphasis added).)

valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i). The ALJ identified this, however, and correctly noted that she would "not provide written analysis about a statement on an issue reserved to the Commissioner as it is inherently neither valuable or persuasive to me." (R. at 26.) Nevertheless, even though the ALJ was not permitted to analyze the merits of Mr. Switzer's conclusion, the ALJ still appropriately discussed Mr. Switzer's relevant clinical findings (the "extensive testing") to demonstrate that Mr. Switzer's opinion was internally supported, as required by 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). There is no error in the ALJ's analysis.

Accordingly, Plaintiff's first assignment of error is not well taken.

**B.     The ALJ Properly Found that Plaintiff Could Perform Light Work with Certain Standing and Walking Restrictions.**

In her second assignment of error, Plaintiff argues that "[t]he ALJ improperly found that [Plaintiff] was capable of performing light work," and that "the ALJ should have found that [Plaintiff] was [only] capable of performing sedentary work." (ECF No. 12 at PAGEID ## 555-561.) Specifically, Plaintiff argues that "light work requires standing or walking, off and on, for a total of 6 hours of an 8-hour workday," but "the ALJ accounted for [Plaintiff] being able to stand and/or walk no more than two hours in an eight-hour workday and no more than thirty minutes at a time with one or two minutes to change position." (*Id.* at PAGEID # 557 (citing R. at 20).) Plaintiff also notes that "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and submits that "the ALJ neglected to indicate [Plaintiff's] limitations related to her inability to lift and carry some objects in the RFC." (*Id.* at PAGEID ## 557-558.) Plaintiff further submits that, "due to existing regulations, she ought to also have been considered disabled" because of her advanced age and

the fact that she should have been considered able to perform only sedentary work. (*Id.* at PAGEID # 559.)

In response, the Commissioner argues that "the ALJ determined Plaintiff had a [RFC] that placed her between the light and sedentary levels of exertion, so the ALJ restricted Plaintiff to light work with additional limitations which placed Plaintiff's ability to stand and walk below the requirements of a "full range" of light work as defined in the applicable regulations. (ECF No. 15 at PAGEID ## 580-585.) The Commissioner notes that the ALJ incorporated the lifting and carrying restrictions for light work from the applicable regulations, and argues that "Plaintiff erroneously conflates the six hours of standing and walking required to perform a 'full range' of light work with the ability to perform any range of light work, such that any standing and walking restrictions would transform a range of light work to sedentary work." (*Id.* at PAGEID ## 583-584.) The Commissioner argues that this argument "is inconsistent with the definition of light work found in the regulations" and "is also inconsistent with decisions from the Sixth Circuit and this Court, which have rejected the very same claim that Plaintiff now raises." (*Id.* (internal citations omitted).) In her Reply brief, Plaintiff concedes that it "is true" that Plaintiff's restricted standing and walking "does not mean [Plaintiff] cannot perform light work," but argues that "it gets [Plaintiff] very close" before summarily restating that her limitations prove that she is capable of no more than sedentary work. (ECF No. 16 at PAGEID # 591.)

Plaintiff's argument is not well taken, as the Undersigned notes that courts throughout the Sixth Circuit routinely reject Plaintiff's argument. For example, in *Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419 (6th Cir. 2015), the Court of Appeals for the Sixth Circuit expressly rejected the arguments that "there is an either/or dichotomy between light work and sedentary work, and [that] because [Plaintiff] could not perform a full range of light work, [they] must

13

necessarily have only been able to do sedentary work." *Blankenship*, 624 F. App'x at 429 (noting that Plaintiff "does not provide any legal authority for this position"). That holding notwithstanding, Plaintiff now asks the Court to reach the opposite conclusion:

> [L]ight work requires standing or walking, off and on, for a total of 6 hours of an 8-hour workday. Yet, the ALJ accounted for [Plaintiff] being able to stand and/or walk no more than two hours in an eight-hour workday and no more than thirty minutes at a time with one to two minutes to change position. **There is a material discrepancy with how the ALJ accounted the ability to perform light work and the accompanying functional limitations. The effects of this are that the adopted RFC is not reflective and cannot be reflective of [Plaintiff's] remaining ability to perform light work.**
>
> \*\*\*
>
> The ALJ accounted for [Plaintiff] sitting 6 hours per workday, while SSR 83-10 states that she must stand or walk for those same 6 hours to be able to perform light work. **The ALJ's own RFC precludes [Plaintiff] from being able to perform light work.** Nowhere in the decision does the ALJ attempt to correct or explain this confusion.

(ECF No. 12 at PAGEID ## 557, 558 (emphasis added; internal citations omitted).) But courts regularly reject Plaintiff's argument. *See, e.g., Brown v. Comm'r of Soc. Sec.*, No. 2:20-CV-424, 2021 WL 940287, at \*10 (S.D. Ohio Mar. 12, 2021) ("[C]ourts, including the Sixth Circuit Court of Appeals, have recognized that light work could include less than six hours of walking/standing.") (citing *Barron-Green v. Comm'r of Soc. Sec.*, No. 1:18 CV 1705, 2019 WL 4194142, at \*7 (N.D. Ohio Sept. 4, 2019) (rejecting argument that a limitations to standing and walking for two hours out of an eight-hour workday and sitting for six hours out of an eight-hour workday are incompatible with light work as a matter of law); *Icke v. Comm'r of Soc. Sec.*, No. 1:16-CV-01208, 2017 WL 2426246, at \*5 (N.D. Ohio May 16, 2017), *report and recommendation adopted*, No. 1:16 CV 1208, 2017 WL 2418729 (N.D. Ohio June 2, 2017) ("a plain reading of the definition of light work provides for a possibility that standing/walking could

14

occur for less than 6–hours in an 8– hour workday"); *Blankenship*, 624 F. App'x at 428 (finding that a two-hour stand/walk requirement is not incompatible with light work)).

Plaintiff makes no effort to distinguish this overwhelming weight of authority in her Reply brief, and in fact affirmatively concedes that the Commissioner's argument "is true" before arguing that her restrictions "prove that [she] is capable of no more than sedentary work." (ECF No. 16 at PAGEID # 591.) This conclusory argument carries no water, however, and the Undersigned also declines to accept Plaintiff's argument regarding the ALJ's discussion of Plaintiff's lifting limitations. By expressly incorporating the lifting restrictions from 20 C.F.R. §§ 404.1567(b) and 416.967(b), the ALJ appropriately set forth Plaintiff's lifting limitations. (R. at 20.) The ALJ's findings were well supported by substantial evidence, and the Undersigned will not entertain Plaintiff's request to reevaluate the weight of that evidence. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013) ("Here, the [plaintiff] asks us to reweigh the evidence and substitute our judgment for that of the ALJ. We cannot do so. Even if we would have taken a different view of the evidence were we the trier of facts, we must affirm the ALJ's reasonable interpretation.") (internal quotations and citations omitted).

Accordingly, Plaintiff's second assignment of error is not well taken.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that the ALJ's decision denying benefits is supported by substantial evidence and was made pursuant to proper legal standards. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: September 19, 2022              /s/ *Elizabeth A. Preston Deavers*
                                      Elizabeth A. Preston Deavers
                                      United States Magistrate Judge